IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

JOSEPH PITTS, #A0259019,           )       CIV. NO. 15-00483 JMS/BMK
                                   )
            Plaintiff,             )       ORDER DISMISSING COMPLAINT
                                   )       IN PART
      vs.                          )
                                   )
NOLAN ESPINDA, et al.,             )
                                   )
            Defendants.            )
_____    )

## ORDER DISMISSING COMPLAINT IN PART

Before the court is pro se Plaintiff Joseph Pitts' civil rights Complaint.

Compl., Doc. No. 1. Plaintiff is a convicted, unsentenced felon who is

incarcerated at the Halawa Correctional Facility ("HCF").[1] He alleges Hawaii

Department of Public Safety ("DPS") and HCF prison officials violated the Eighth

and Fourteenth Amendments, and Hawaii Revised Statutes ("HRS") §§ "707-

711(A) [sic], 707-712(1)(A)," and 710-1063, during and after a cell extraction and

during two disciplinary proceedings.[2] *Id.*, PageID #18-19.

---

[1] *See* Compl., Doc. No. 1, PageID #21; *see also State v. Pitts*, 131 Haw. 537, 544, 319 P.3d 456, 463 (2014) (vacating judgment on appeal and remanding for appointment of counsel "for the purposes of filing a motion for a new trial and for resentencing").

[2] Plaintiff names DPS Director and former HCF Warden Nolan Espinda; HCF Chief of Security ("COS") Lyle Antonio; DPS Sheriff's and Internal Affairs Offices; HCF Adult Correctional Officers ("ACO") Russel Botelho, Gernler, Magdadaro, Taylor, J. Tabali, Keolanui, Captain Aguon, Lieutenant Ho, and Lieutenant Kellie Kent; First Adjustment Committee

(continued...)

Plaintiff's Complaint is DISMISSED in part pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). Specifically, Plaintiff's excessive force and state common law assault and battery claims against Defendants Botelho, Taylor, Gernler, Keolanui, Magdadaro, Kent, and Captain Aguon state a claim and require an answer.

Plaintiff fails to state excessive force and state common law assault and battery claims against Defendants Lieutenant Ho and J. Tabali, and they are DISMISSED.

Plaintiff's claims against the DPS Sheriff's and Internal Affairs Offices and their unidentified officers fail to state a claim and are DISMISSED.

Plaintiff's claims against Director Espinda and COS Antonio for failure to supervise, discipline, or enforce prison policies and procedures are DISMISSED.

Plaintiff's due process claims against Adjustment Committee members Morreira, Villalobos, Ueda, Manumaleuna, and Tuifau are DISMISSED.

Plaintiff's unsworn falsification and delay of medical care claims against Defendant Val DeMello, RN, are DISMISSED.

---

[2](...continued)
Members Keoni Morreira (Chair), Manumaleuna, and Janice Villalobos; Second Adjustment Committee Members Ueda (Chair) and Francis Tuifau; HCF Nurse Val DeMello, RN; and unidentified Doe Defendants (collectively, "Defendants").

Plaintiff may file an amended complaint curing the deficiencies in claims dismissed by this order on or before March 4, 2016.  In the alternative, Plaintiff may notify the court in writing on or before March 4, 2016, that he will stand on his excessive force and common law assault and battery claims against Defendants Botelho, Taylor, Gernler, Keolanui, Magdadaro, Aguon, and Kent and proceed on those claims only.  In that event, the court will order the United States Marshal to serve the Complaint as directed by Plaintiff and those Defendants will be directed to answer.

## I. BACKGROUND

These facts are taken from the Complaint and accepted as true, but should not be construed as findings by the court.  Plaintiff alleges that on or about July 9, 2014, he returned to his cell in HCF's "high SHU,"[3] and discovered that his commissary items had not been delivered and that someone had apparently tampered with his food tray.  Compl., Doc. No. 1, PageID #6.  Plaintiff "immediately" began yelling and kicking his cell door.  *Id.*  When he received no response, Plaintiff told ACO Costello to move away because he intended "to throw bodily waste on the floor and window" outside the cell.  *Id.*  Plaintiff then threw feces through his tray access slot onto the window, table, and floor outside his cell.

---

[3] High SHU apparently refers to HCF's highest level special or segregated housing unit.

Plaintiff then packed his belongings and awaited an unidentified captain's arrival, anticipating removal from the cell.  Plaintiff alleges that while he waited, someone repeatedly slammed his arm in his tray slot, because he "refused to move it and requested to speak to a captain." *Id.*, PageID #4.  He says he then locked his tray slot. *Id.*, PageID #7.

   After approximately four hours, Sergeant Segich addressed Plaintiff over the intercom; Plaintiff asked her to come speak with him.  Segich arrived covered in plastic for protection and asked Plaintiff if he would lie on the floor and prepare to be handcuffed for removal.  Plaintiff became suspicious, and requested to be taken to suicide watch.  He then lay on the floor while Defendants Gernler, Magdadaro, Taylor, Botelho, and Keolanui cuffed and carried him outside the cell, while Lieutenant Kent filmed the extraction.  Plaintiff was willing to walk, but was later told that he was not allowed to do so because there was feces on the floor and cell door.  Plaintiff walked to a van where he was ordered to kneel with his face and chest facing the seat bottom.

   Once inside the van, Plaintiff claims "he was immediately attacked till he almost died and defecated on himself." *Id.*, PageID #10.  Plaintiff says a van driver was present during the assault, and asserts that Lieutenant Kent turned the camera off inside the van.  Plaintiff alleges that Captain Aguon was "in charge

during the extraction," and told Plaintiff that he "gave the order to assault" him. *Id.*, PageID #3, #9.  Plaintiff says he received a gash inside his mouth, had difficulty breathing, injured his back and shoulder, and now suffers from migraines and dizziness.

Plaintiff was taken to the medical unit, where Nurse Ricky and Defendant DeMello examined him and took pictures.  Plaintiff says DeMello failed to record his statements verbatim, note the gash in his mouth, or record that he had defecated on himself in the van.  *See id.*, PageID #9-10.  He says that when Ricky and DeMello left the examination room, ACO Gernler struck him again.  Plaintiff was taken to the Medium SHU, where he was stripped and, after he indicated that he still wanted to be put on suicide watch, he was escorted there.  Plaintiff claims that he was not treated for his injuries for "over sixty days."[4]  *Id.*, PageID #9, ¶ 73. He says he filed a grievance regarding the cell extraction on July 16, 2014, #269906, but says the grievance officer refused to process it.

Ten days after the cell extraction, on or about July 19, 2014, ACOs Botelho and Kepa escorted Plaintiff to the medical unit for asthma treatment.  Plaintiff says Botelho squeezed his arm tightly and, when they were left alone, said "go ahead

---

[4] Plaintiff later claims that he was not examined until on or about January 22, 2015, more than six months after the extraction.  *Id.*, PageID #12, ¶ 111.

and write it up I don't care," referring to the cell extraction.  *Id.*, PageID #10.

Plaintiff immediately called for a nurse, Kepa came back into the room, and Kepa

and Botelho escorted Plaintiff back to his cell.  Plaintiff reported this to Captain

Aguon, apparently upset that he had contact with Botelho, but Aguon told Plaintiff

that he had not received a complaint from Plaintiff regarding the cell extraction or

any other alleged misconduct by Botelho against Plaintiff.  *Id.*, PageID #11.

Plaintiff lists grievances and letters that he submitted between July 16,

2014, and May 2015: (1) reporting the July 9, 2014 assault and the July 19, 2014

incident with Botelho; (2) requesting medical attention for his shoulder on

September 6, 2014; (3) notifying Director Espinda of the alleged assault;

(4) requesting orthopedic care; (5) complaining of harassment and denial of

medical care; (6) grieving ACO Thomas Liu's alleged refusal to process Plaintiff's

grievances; and (7) challenging the denial of his grievances and the approval of

the two adjustment committee findings of guilt.  *See id.*, PageID #11-14.  It

appears that prison officials responded to most, if not all, of Plaintiff's

submissions.  *See id.*  Plaintiff says he filed complaints regarding the July 9, 2014

cell extraction with the DPS Sheriff's and Internal Affairs Offices on or about

February 27, 2015, but neither pursued charges.  *Id.*, PageID #13-14.

6

Plaintiff alleges he was denied due process during two separate disciplinary proceedings. *See id.*, PageID #14-17.  In the first, Plaintiff was charged with several infractions regarding the July 9, 2014 incident.  ACO Sheridan investigated the incident and reviewed statements from Defendants Aguon, Ho, Botelho, Taylor, Magdaro, Keolanui, and Gernler, and from non-defendants Sergeants Christianson and Segich.  Plaintiff complains these statements were identical but for their signatures, suggesting collusion. *Id.*, PageID 14-15.  Plaintiff says Sheridan failed to speak with Plaintiff's inmate witnesses despite assurances that he would.  Plaintiff admits, however, that Sheridan dismissed one charge of disobeying staff orders after his investigation.

On October 16, 2014, Defendants Morreira and Villalobos and committee member Meagan Owens presided over Plaintiff's First Adjustment Committee hearing.  Plaintiff was by then housed in the HCF psychiatric ward.  Chairperson Morreira told Plaintiff that he would interview Plaintiff's witnesses after the hearing and then speak with him.  Morreira denied Plaintiff's request to read all of the witness statements at the hearing, although they were summarized.  On December 5, 2014, Morreira and Villalobos met with Plaintiff, and again refused to allow him to read each statement.  On December 9, 2014, the First Adjustment Committee found Plaintiff guilty of the remaining three charges (described below),

sentenced him to time served in the High SHU, and raised his custody level.  *Id.*,

PageID #16.  Plaintiff remained in the Medium SHU or the psychiatric ward until

February 11, 2015, when he was returned to the High SHU.  *Id.*, PageID #13.

Plaintiff alleges that he saw ACO Botelho on duty the day after he

transferred back to the High SHU.  He does not detail what occurred, but he

immediately sought a separation order against Botelho.

On March 4, 2015, Botelho charged Plaintiff with threatening him,

destroying or damaging government property, and refusing to obey an order.

Plaintiff responded to the charges and requested witnesses, but alleges his

witnesses were not contacted.  On March 9, 2015, Second Adjustment Committee

members Tuifau and Ueda held a hearing at which they denied Plaintiff's request

to call witnesses.  Plaintiff was apparently found guilty, because he complains that

he has never received a response to his appeal, but this is not explicit.  Plaintiff

provides no other details.

Plaintiff alleges four claims for relief: (1) "Misuse of Force;" (2) "Collusion

and Falsifying Injury Records;" (3) "Violation of Plaintiff's Right to Be

Protected;" and (4) "Denial of Due Process."  He seeks declaratory and injunctive

relief and compensatory and punitive damages.

## II. <u>SCREENING</u>

The court must screen all civil actions brought by prisoners proceeding in

forma pauperis or seeking redress from a government entity, officer, or employee.

28 U.S.C. §§ 1915(e)(2) & 1915A(a).  Complaints or claims that are frivolous,

malicious, fail to state a claim, or seek relief from a defendant who is immune

from relief must be dismissed.  28 U.S.C. §§ 1915(e)(2) & 1915A(b); 42 U.S.C.

§ 1997e(c)(1).

A complaint that lacks a cognizable legal theory or alleges insufficient facts

under a cognizable legal theory fails to state a claim.  *Balistreri v. Pacifica Police

Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To state a claim, a pleading must

contain a "short and plain statement of the claim showing that the pleader is

entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This "demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009).  "[A] complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.*

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff must

plead facts that allow "the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Id.*

A court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The court must identify and disregard allegations that "are not entitled to the assumption of truth," that is, allegations that are legal conclusions, bare assertions, or merely conclusory. *Iqbal*, 556 U.S. at 679-80.  Then, the court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681.  If the allegations state a plausible claim for relief, the claim may proceed. *Id.* at 680.

The court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  "[C]onclusory allegations of law and unwarranted inferences are insufficient." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678.

Leave to amend should ordinarily be granted if the plaintiff can correct the defects in the complaint. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).  If it is clear the complaint cannot be saved by amendment, dismissal

without leave to amend is appropriate.  *Sylvia Landfield Trust v. City of L.A.*, 729

F.3d 1189, 1196 (9th Cir. 2013).

## III.  <u>DISCUSSION</u>

To state a civil rights claim under 42 U.S.C. § 1983, a plaintiff "must allege

a violation of a right secured by the Constitution and laws of the United States,

and must show that the alleged deprivation was committed by a person acting

under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

Section 1983 requires a connection between a defendant's actions and a

plaintiff's allegations.  *See Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978);

*Rizzo v. Goode*, 423 U.S. 362 (1976).  "A person 'subjects' another to the

deprivation of a constitutional right, within the meaning of section 1983, if he

does an affirmative act, participates in another's affirmative acts, or omits to

perform an act which he is legally required to do that causes the deprivation of

which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

## A.    **DPS Sheriff's and Internal Affairs Offices and Unidentified Officers**

"[I]n the absence of consent a suit in which the State or one of its agencies

or departments is named as the defendant is proscribed by the Eleventh

Amendment."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100

(1984).  "This jurisdictional bar applies regardless of the nature of the relief

11

sought." *Id.*; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *see also In re Jackson*, 184 F.3d 1046, 1048 (9th Cir. 1999) (holding that the court may raise Eleventh Amendment immunity sua sponte).  The State of Hawaii and DPS have not waived their immunity from suit.

Additionally, states, state agencies, and state officials sued in their official capacities are not persons subject to civil rights claims for damages under 42 U.S.C. § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64-66 (1989); *see also Hafer v. Melo*, 502 U.S. 21, 30 (1991) (clarifying that Eleventh Amendment does not bar suits against state officials in their individual capacities or suits for prospective injunctive relief against state officials in their official capacities).  The DPS Sheriff's and Internal Affairs Offices are not persons within the meaning of 42 U.S.C. § 1983.

Finally, Plaintiff has no constitutional right to have DPS or its officers charge others on his behalf.  *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 768 (2005) ("[T]he benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations."); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or

nonprosecution of another."); *Smith v. Ark. State Highway Emps., Local 1315*, 441 U.S. 463, 465 (1979) (per curiam) (noting the Constitution "does not impose any affirmative obligation on the government to listen [or] to respond" to grievances); *see also Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994); *Mancini v. City of Cloverdale Police Dep't*, 2015 WL 4512274, at *4 (N.D. Cal. July 24, 2015); *Doe v. Cty. of San Mateo*, 2009 WL 735149, at *8 (N.D. Cal. Mar. 19, 2009).

The DPS Corrections Division investigated Plaintiff's claims, regardless of whether that investigation was conducted by Internal Affairs or the Sheriff's Office.  DPS is not required to bring charges at Plaintiff's behest, however.  *See, e.g.*, *Boldt v. Myers*, 376 F. App'x. 800, 801 (9th Cir. 2010); *Hason v. Beck*, 2013 WL 6732672, at *5 (C.D. Cal. Dec. 19, 2013); *Sexual Sin De Un Abdul Blue v. City of L.A.*, 2010 WL 890172, at *6 (C.D. Cal. Mar. 8, 2010).  Plaintiff fails to state a claim against the DPS Sheriff's and Internal Affairs Offices and/or their unidentified personnel and these claims are DISMISSED.

**B.**    **"Misuse of Force"**

Plaintiff alleges Defendants Botelho, Taylor, Gernler, Keolanui, Magdadaro, Tabali, Ho, Aguon, and Kent violated his constitutional rights and state law during his cell extraction and transport to the medical unit.  *See* Compl.,

Doc. No. 1, PageID #7-9, 18.  He alleges that DPS Director and former HCF

Warden Espinda and COS Antonio are liable based on their supervisory positions.

### 1.     *Unconstitutional Excessive Force*

The Eighth Amendment's prohibition against the malicious or sadistic use

of force, *see Hudson v. McMillian*, 503 U.S. 1, 7 (1992), does not apply "until

after conviction *and sentence*."  *Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989)

(emphasis added).  Unsentenced inmates like Plaintiff derive protection from

excessive force under the Fourteenth Amendment's Due Process clause, if that

force amounts to punishment.  *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979)

("[U]nder the Due Process Clause, a detainee may not be punished prior to an

adjudication of guilt in accordance with due process of law."); *Ingraham v.*

*Wright*, 430 U.S. 651, 671 n.40 (1977) ("Eighth Amendment scrutiny is

appropriate only after the State has complied with the constitutional guarantees

traditionally associated with criminal prosecutions.").  Pre-trial detainees and

unsentenced inmates like Plaintiff "retain at least those constitutional rights that

. . . are enjoyed by convicted prisoners."  *Bell*, 441 U.S. at 545; *Redman v. Cty. of*

*San Diego*, 942 F.2d 1435, 1441 (9th Cir. 1991) (en banc).

To state a claim, Plaintiff "must show only that the force purposely or

knowingly used against him was objectively unreasonable," rather than prove a

subjective standard that takes into account a defendant's state of mind.  *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (discussing excessive force standards as applied to pretrial detainee's claims).  To determine the reasonableness or unreasonableness of the force used, courts consider:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* (citing *Graham*, 490 U.S. at 396).

Plaintiff states a cognizable excessive force claim against Defendants Botelho, Gernler, Keolanui, Magdadaro, Taylor, Aguon, and Kent and these claims shall be served and will require an answer.

Plaintiff, however, alleges no facts showing Defendants Ho or Tabali's involvement in the cell extraction or subsequent assault.  He explicitly states that Tabali was *not* part of the extraction team, yet provides no other facts linking Tabali to his claims.  *See* Compl., Doc. No. 1, PageID #3.  Similarly, beyond Plaintiff's allegation that Ho submitted a report to the First Adjustment Committee regarding the cell extraction, he sets forth no facts regarding Ho.  *See* Compl., Doc. No. 1, PageID #14.  Plaintiff fails to state a claim against Tabali and Ho and such claims are DISMISSED.

15

### 2.      *Assault and Battery*

Plaintiff has no private right of action for his criminal assault and battery claims under HRS §§ "707-711(A)" or 707-712(1)(A).  *See Linda R.S.*, 410 U.S. at 619.  Liberally construing this claim, however, a person commits the common law tort of assault if he acts with intent to cause another harmful or offensive contact or apprehension thereof, and the other person apprehends imminent contact.  *See McCormack v. City & Cty. of Honolulu*, 762 F. Supp. 2d 1246, 1253 (D. Haw. 2011) (citations omitted).  A person commits the common law tort of battery if he acts with intent to cause nonconsensual harmful or offensive contact, or apprehension thereof, and the contact occurs.  *Id.*; *Williams v. Aona*, 121 Haw. 1, 13, 210 P.3d 501, 513 (2009).

Plaintiff states common law assault and battery claims against Botelho, Gernler, Keolanui, Magdadaro, Taylor, Aguon, and Kent and these claims shall be served and require an answer.  For the same reasons as discussed above, Plaintiff fails to state a claim against Tabali and Ho for assault and battery and these claims are DISMISSED.

## C.     **Supervisor Liability**

Plaintiff claims there is a clear and unmistakable "pattern of excessive force" at HCF, about which Director and former Warden Espinda and COS

16

Antonio "were and are fully aware."  Compl., Doc. No. 1, PageID #4, 9.  Plaintiff

alleges that Espinda, Antonio, and Aguon failed to (1) discipline or "curb the

known pattern of physical abuse of inmates" by Botelho, Gernler, Keolanui,

Magdadero, and Taylor; and (2) institute clear policies, enforce procedures, and

install cameras to prevent the misuse of force.  *Id.*, PageID #18.

### 1.    *Legal Standards*

Government officials may not be held liable for the unconstitutional

conduct of their subordinates under a theory of respondeat superior.  *Iqbal*, 556

U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a

plaintiff must plead that each Government-official defendant, through the

official's own individual actions, has violated the Constitution.").  Supervisors

may be held liable under § 1983 only if they (1) were personally involved in the

constitutional deprivation, or (2) there is a sufficient causal connection between

the supervisor's wrongful conduct and the constitutional violation.  *Starr v. Baca*,

652 F.3d 1202, 1207 (9th Cir. 2011); *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.

1989).  In general, a plaintiff "must allege that every government defendant --

supervisor or subordinate -- acted with the state of mind required by the

underlying constitutional provision."  *OSU Student Alliance v. Ray*, 699 F.3d

1053, 1070 (9th Cir. 2012).  Supervisors may therefore be held liable under

§ 1983:

> (1) for setting in motion a series of acts by others, or knowingly
> refusing to terminate a series of acts by others, which they knew or
> reasonably should have known would cause others to inflict
> constitutional injury; (2) for culpable action or inaction in training,
> supervision, or control of subordinates; (3) for acquiescence in the
> constitutional deprivation by subordinates; or (4) for conduct that
> shows a reckless or callous indifference to the rights of others.

*Moss v. U.S. Secret Serv.*, 675 F.3d 1213, 1231 (9th Cir. 2012) (citation and

quotation marks omitted), *rev'd on other grounds*, *Wood v. Moss*, 134 S. Ct. 2056

(2014).

A claim based on an allegedly unconstitutional policy is generally brought

against the municipality.  *Monell*, 436 U.S. at 691; *Gillette v. Delmore*, 979 F.2d

1342, 1346 (9th Cir. 1992) ("A section 1983 plaintiff may establish municipal

liability . . . [by showing] that the individual who committed the constitutional tort

was an official with 'final policy-making authority' and that the challenged action

itself thus constituted an act of official governmental policy.") (citing *Pembaur v.

City of Cincinnati*, 475 U.S. 469, 480-81 (1986)).

### 2.    Claims Against Aguon

Plaintiff alleges that Captain Aguon ordered the extraction team to assault

him; it is unclear whether Aguon was present during the extraction.  Nonetheless,

this is sufficient to show Aguon's personal involvement, causal connection, knowledge of, and acquiescence in the extraction team's alleged misconduct.  This states a claim against Aguon as a supervisor and he is required to answer.

### 3.   *Claims Against Espinda and Antonio*

In *Starr*, the Ninth Circuit held that the complaint stated a claim against Los Angeles County Sheriff Baca because it contained extensive, detailed factual allegations that identified what Baca knew or should have known and what Baca did or failed to do, as well as "sufficient facts to plausibly suggest Sheriff Baca's 'knowledge of' and 'acquiescence in' the unconstitutional conduct of his subordinates."[5]  *Hydrick v. Hunter*, 669 F.3d 937, 941 (9th Cir. 2012) (quoting *Starr*, 652 F.3d at 1207, 1209).  "[T]he absence of specifics is significant" when alleging supervisor liability, because *Iqbal* makes clear that a complaint against a government official must show that the official's own individual actions violated

---

[5] Allegations against Baca included a letter and weekly reports that Baca received regarding inmate abuse; a memorandum of understanding ("MOU") between Baca and the Department of Justice ("DOJ") addressing constitutional violations against inmates; a DOJ report finding Baca failed to comply with the MOU; several reports provided to Baca by a special counsel, which noted inmate abuse and problems at the jail; and instances when Baca was specifically informed of (1)  the failure to investigate a deputy's attack resulting in an inmate's death; (2) inmate-on-inmate attacks and the failure to provide reasonable security (pursuant to a settlement in a separate civil action); and (3) inmate beatings and killings that resulted from the failure of deputies to provide reasonable security.  *See Starr*, 652 F.3d at 1209-11; *see also Hydrick*, 669 F.3d at 941.

the Constitution.  *Id.* at 941-42 (finding complaint's allegations bald and conclusory, "devoid of specifics" and insufficient to plausibly infer defendant's knowledge of and/or acquiescence in the allegedly unconstitutional conduct by subordinate employees).

In support of his claims against Espinda and Antonio, Plaintiff alleges that inmates Jose Nievis Baez, Jeffery Diaz, Mark Berteleson, and Raphael Hernandez were assaulted at HCF; he provides Baez's and Hernandez's affidavits.  He also alleges that Sheriff F. Villoso told him that "out of 300 reports of excessive force complaints in 2014, less than three percent of the officers implicated recieved [sic] any type of discipline."  Compl., Doc No, 1, PageID #4.

Plaintiff's conclusory assertions regarding assaults in general at HCF, however, and in particular regarding inmates Baez, Diaz, Bertelesen, and Hernandez, are insufficient to show that Espinda and Antonio knew or should have known that Plaintiff's cell extraction would likely result in harm to Plaintiff.  *Iqbal*, 556 U.S. at 679-80.  Baez was allegedly assaulted in 2015, *after* Plaintiff's cell extraction.  Baez Decl., Doc. Nos. 5-1, 5-2.  Hernandez provides no details about the alleged assaults he experienced, *see* Hernandez Decl., Doc. No. 5-3, but his pending civil rights action alleges ACO Maitland Spencer assaulted him in 2013, and does not allege this occurred during a cell extraction.  *See Hernandez v.*

*Spencer*, Civ. No. 15-00256 SOM/RLP (D. Haw. 2015).  Spencer is not a named

Defendant here.  Bertelesen was allegedly assaulted "by the extraction team" in

September 2014, also *after* Plaintiff's extraction, and Plaintiff provides few details

regarding Diaz's alleged assaults.  *See* Compl., Doc. No. 1, PageID #5.

Plaintiff's bare assertions are insufficient to show that Espinda or Antonio

knew of a "pattern of abuse" by Botelho, Gernler, Keolanui, Magdadero, Kent,

Aguon, and Taylor, or of cell extraction teams in general.  *See* Compl., Doc. No. 1,

PageID #18.  Plaintiff's allegations do not show Espinda's or Antonio's

knowledge of and failure to address a pervasive culture of violence at HCF.

Nor does Sheriff Villoso's alleged comment to Plaintiff that DPS received

300 complaints in 2014 and only 3% resulted in discipline establish a pervasive

culture of violence at HCF, or show a causal connection between Espinda and

Antonio's action or inaction and Plaintiff's alleged assault.  Accepting that there

were 300 prisoner complaints of guard-on-inmate violence at HCF in 2014, the

fact that only 3% resulted in discipline against guards also plausibly suggests that

97% of these complaints were determined to be unfounded.

Further, Plaintiff identifies no policies or procedures that Espinda and

Antonio failed to enforce to prevent such assaults during cell extractions or

otherwise.  The existence of such policies cuts against a finding that Espinda or

Antonio failed to take action to prevent violence during cell extractions.  Rather, such policies show that prison officials are attempting to curb violence at HCF. For example, although Plaintiff complains that there were no closed circuit cameras installed in the High SHU when the incident occurred, he asserts that Kent filmed his cell extraction inside the facility and only turned the camera off in the van.  This shows that (1) there existed a policy of filming at least some cell extractions; and (2) the extraction team attempted to hide the assault from prison authorities.  Without more, Espinda and Antonio cannot be liable for a failure to take measures to ensure inmate safety at HCF if their subordinates purposely violated DPS policies to cover up misconduct.

Fourth, Plaintiff's primary complaint is that Espinda and Antonio failed to discipline the extraction team members *after* the incident, and thereafter upheld the Adjustment Committees' decisions and denied his grievances.  A supervisor's inaction *after* an alleged violation cannot plausibly allege "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation" when it occurred.  *Starr*, 652 F.3d at 1207.  Although a supervisor may be personally liable based on the supervisor's "knowledge of and acquiescence in unconstitutional conduct by his or her subordinates," a plaintiff must still allege at least some conduct *before* the unconstitutional incident that shows the supervisor

22

knew or should have known that his conduct could cause the constitutional

violation the plaintiff suffered.  *See Jones v. Cty. of Sacramento*, 2010 WL

2843409, at *7 (E.D. Cal. July 20, 2010); *see also Starr*, 652 F.3d at 1208.

Plaintiff fails to state a supervisor liability claim against Director Espinda or COS

Antonio and these claims are DISMISSED.

## D.    Collusion and Falsifying Injury Records

Plaintiff alleges that DeMello colluded with Botelho, Gernler, Taylor,

Magdadaro, Kent, Aguon, and Keolanui to cover up the alleged assault when she

failed to record his statements verbatim, neglected to note a gash inside his mouth

and that he had defecated on himself, and stated he was "carried, refused to

ambulate" on his medical intake report in violation of HRS § 710-1063(1)(A-B).

Compl., Doc. No. 1, PageID #9-10, 19.  He suggests this led to a delay in medical

care in violation of the Eighth Amendment.  *Id.*, PageID #19.

### 1.    *Conspiracy*

To state a conspiracy claim, a plaintiff "must show 'an agreement or

'meeting of the minds' to violate constitutional rights.'"  *Franklin v. Fox*, 312 F.3d

423, 441 (9th Cir. 2002) (citation omitted).  A court need not "accept as true

allegations that are merely conclusory, unwarranted deductions of fact, or

unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988

23

(9th Cir.), *amended on other grounds*, 275 F.3d 1187 (9th Cir. 2001).  "A mere allegation of conspiracy without factual specificity is insufficient."  *Karim Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988); *see also Woodrum v. Woodward Cty.*, 866 F.2d 1121, 1126 (9th Cir. 1989) (conclusory allegations of conspiracy did not support a § 1983 claim).

Plaintiff alleges no facts supporting an agreement or meeting of the minds between DeMello and the extraction team.  Moreover, DeMello's observations do not materially contradict Plaintiff's own facts and may include what she was told by the extraction team when Plaintiff was brought to the medical unit.  Plaintiff fails to state a conspiracy claim and this claim is DISMISSED.

### 2.   *Delay of Medical Care*[6]

Plaintiff alleges DeMello's report led to a delay of medical care because it was not signed by a doctor and he was not examined until "months after the assault."  *Id.*, PageID #10.  To state a § 1983 medical claim, a plaintiff must show that the defendant acted with "deliberate indifference to serious medical needs."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  "Deliberate indifference is a high legal standard."

---

[6] To be clear, Plaintiff confines his claims to DeMello's allegedly false intake report and alleges no claims against Nurse Ricky or any other prison medical staff.

*Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  Deliberate indifference requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Deliberate indifference may be shown (1) by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference; (2) when a prison official intentionally denies, delays, or interferes with medical treatment; or (3) by the way prison medical personnel respond to a prisoner's medical needs.  *See Estelle*, 429 U.S. at 104-05; *Jett*, 439 F.3d at 1096.

DeMello's allegedly inaccurate report does not support that she acted with deliberate indifference to Plaintiff's health or serious medical needs.  Nurse Ricky and DeMello triaged Plaintiff immediately after the cell extraction before sending him to suicide watch.  Ricky examined Plaintiff and DeMello photographed him and wrote the intake report.  Plaintiff does not allege that he told either of them about the gash in his mouth or his shoulder and back pain, or that they refused to treat his pain or obvious injuries.  DeMello's failure to note a cut inside of Plaintiff's mouth, or specify that he defecated on himself in the van, as opposed to in his cell, does not support a claim that she acted with deliberate indifference to his serious medical needs.

25

Additionally, Plaintiff's transport to a suicide watch cell suggests that he was medically monitored while there.  Plaintiff does not allege that he informed anyone while he was on suicide watch that he required care for his mouth, shoulder, or back and was denied such care.

Plaintiff admits that he received asthma treatment at the medical unit ten days after the cell extraction.  He does not allege that he requested care for his mouth, back, or shoulders then, or explain why he was unable to do so.  Plaintiff requested care for his shoulder in September 2014, and admits Antonio told him that he was scheduled for an appointment.  Plaintiff states that he received two injections for his shoulder within sixty days of the cell extraction.

Plaintiff was also in the psychiatric ward for at least part of the time while awaiting his disciplinary hearing, but does not explain why he did not request care for his mouth, shoulder, or back then.  Finally,  Plaintiff says he "checked in suicide watch on February 17, 2015," to get away from Botelho in the High SHU, indicating he was able to access medical care if needed.  *Id.*, PageID #13.  These facts do not plausibly show that DeMello's allegedly false or inadequate intake report led to a delay in medical care for Plaintiff's serious injury and this claim is DISMISSED.

### 3.      Unsworn Falsification to Authorities: HRS § 710-1063

Plaintiff alleges DeMello violated HRS § 710-1063, a criminal misdemeanor, by failing to record his statements verbatim.[7]  Plaintiff has no private right of action to enforce a criminal statute and this claim is DISMISSED. *See Linda R.S.*, 410 U.S. at 619.

## E.    Failure to Protect

Plaintiff alleges that HCF "management" violated DPS COR. 10.1B.05, when Botelho was allowed to escort him to the medical unit on July 19, 2014, and they were alone for several minutes.  Compl., Doc. No. 1, PageID #10-11. Plaintiff also complains that Botelho was assigned to the High SHU where Plaintiff was rehoused on or about February 11, 2015.  *Id.*, PageID #13.

DPS policy requires separation of an inmate and a correctional officer when the officer is alleged to have assaulted the inmate.  *See* Policy No. COR.

---

[7] An individual violates HRS § 710-1063, if, with "intent to mislead a public servant in the performance of the public servant's duty," he:

(a) Makes any statement, in written, printed, or electronic form, which the person does not believe to be true, in an application for any pecuniary or other benefit or in a record or report required by law to be submitted to any governmental agency;

(b) Submits or invites reliance on any statement, document, or record, in written, printed, or electronic form, which the person knows to be falsely made, completed, or altered; or

(c) Submits or invites reliance on any sample, specimen, map, boundary-mark, or other object the person knows to be false.

10.1B.05.13.[8]  Plaintiff concedes, however, that although he filed a grievance regarding the extraction on July 16, 2014, the grievance officer had "refused to process" it.  *Id.*  If HCF management was unaware of an assault during the cell extraction, they did not violate DPS policy by failing to separate Plaintiff from Botelho.

To the extent Plaintiff alleges that his transfer back to the High SHU *after* his disciplinary proceedings and grievances were resolved violated DPS policy, because Botelho worked at the High SHU, Plaintiff fails to state a claim.  Prison policy specifically mandates separation only "until the case is resolved."  *See* DPS Policy No. COR10.1B.05.  This claim is DISMISSED.

Plaintiff only alleges a violation of DPS policy regarding the July 19, 2014, "Botelho escort," and makes no constitutional claim.  But to the extent a constitutional claim can be liberally construed from Plaintiff's confusing

---

[8] Policy No. COR.10.1B.05, deals with procedures following a reported sexual or physical assault on an inmate, and states in pertinent part:

> If the alleged assailant is a correctional employee, that employee shall not be involved in any proceedings involving the victim, including medical care rendered, counseling, hospital duty or transport.  The victim and the alleged assailant shall have no contact with each other, until the case is resolved and the victim's safety can be assessed by the Chief of Security.

COR.10.1B.05.13.  *See* http://dps.hawaii.gov/wp-content/uploads/2014/11/COR.10.1B.05 (last visited Jan. 27, 2016).

allegation of facts, he fails to state a claim.  The Constitution requires prison officials to take reasonable measures to guarantee inmates' safety.  *Farmer*, 511 U.S. at 832-33; *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005).  A prisoner must show that prison officials acted with deliberate indifference to the threat of serious harm or injury.  *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002).[9]  That is, prison officials must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and . . . must also draw the inference."  *Farmer*, 511 U.S. at 837.  Liability follows only if a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Id.* at 847.

Because HCF prison officials had not received Plaintiff's grievance alleging that Botelho assaulted him during the cell extraction, they could not have acted with deliberate indifference to a substantial threat to Plaintiff's safety when Botelho was assigned to escort him to the medical unit on July 19, 2014.  *See Taylor v. Barkes*, — U.S. —, 135 S. Ct. 2042, 2045 (2015) (noting that *Farmer* holds that "liability requires actual awareness of risk").  And, prison officials

---

[9]  The court recognizes that Ninth Circuit law governing this issue may be revisited following *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015).  *See Hatter v. Dyer*, — F. Supp. 3d —, 2015 WL 9613769 (C.D. Cal. Dec. 31, 2015) (discussing tension between *Kingsley* and *Castro v. Cty. of Los Angeles*, 797 F.3d 654 (9th Cir. 2015), *r'hrg en banc granted*, 808 F.3d 536 (Dec. 28, 2015), regarding whether a pretrial detainee asserting a Fourteenth Amendment failure-to-protect claim must show deliberate indifference).

cannot be held deliberately indifferent for transferring Plaintiff back to the High

SHU after the incident was investigated and Plaintiff's claims were denied.  Prison

officials cannot be required to separate an inmate from a guard forever when an

inmate alleges the guard assaulted him, after such claims have been investigated

and denied.  Plaintiff fails to state a claim under state or federal law and this claim

is DISMISSED.

## F.    Due Process

Plaintiff alleges that he was denied due process at two Adjustment

Committee disciplinary hearings based on a denial of his right to call witnesses.

### *1.    Legal Standard*

The Fourteenth Amendment protects prisoners against deprivation or

restraint of "a protected liberty interest" under the Constitution or through

imposition of an "atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir.

2003) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)) (internal quotation

marks omitted).  Determination of an atypical hardship is guided by:

> (1) whether the challenged condition "mirrored those conditions
> imposed upon inmates in administrative segregation and protective
> custody," and thus comported with the prison's discretionary
> authority; (2) the duration of the condition, and the degree of restraint

imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Id.* at 861 (quoting *Sandin*, 515 U.S. at 486-87).  Only if an inmate has a protected liberty interest, or "[i]f the hardship is sufficiently significant, then the court must determine whether the procedures used to deprive that liberty satisfied Due Process."  *Id.* at 860.

Due process during a prison disciplinary hearing requires: (1) written notice of charges at least 24 hours before the disciplinary hearing; (2) a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action; (3) the right to call witnesses and present documentary evidence if this will not jeopardize institutional safety or correctional goals; (4) the right to appear before an impartial body; and (5) assistance from fellow inmates or prison staff in complex cases when necessary.  *Wolff v. McDonnell*, 418 U.S. 539, 563-72 (1974).  Confrontation and cross examination are not generally required.  *Id.* at 567; *Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994), *overruled on other grounds by Sandin*, 515 U.S. at 483-84.

Additionally, due process during a prison disciplinary hearing only requires that "some evidence" exists to support the findings.  *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003).

Whether there is "some evidence" to support imposition of discipline "is a question of law." *Castro v. Terhune*, 712 F.3d 1304, 1313-14 (9th Cir. 2013) (discussing a gang validation determination). The "some evidence" standard is "minimally stringent." *Castro*, 712 F.3d at 1314 (quoting *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir. 1994)). The relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached." *Hill*, 472 U.S. at 455-56.

## 2.   *First Adjustment Committee Hearing*

The First Adjustment Committee found Plaintiff guilty of violating DPS Policy Nos. COR. 13.03.4.2a.6(14 & 15) and COR. 13.03.4.2a.7(1).[10] The committee sentenced Plaintiff to time served in the High SHU and raised his

---

[10] Policy No. COR.13.03.4.2a.6(14) prohibits:

Possession, tampering, compromising or manufacturing of any security equipment or locking mechanism, such as, but not limited, to handcuffs, handcuff keys, or any tool designed to lock or unlock any type of locking mechanism.

Policy No. COR. 13.03.4.2a.6(15) prohibits:

Throwing or attempting to throw feces, urine, blood, or other types of bodily fluids (including spitting) at or on staff.

Policy No. COR. 13.03.4.2a.7(1) prohibits:

The use of physical interference or obstacle resulting in the obstruction, hindrance, or impairment of the performance of a correctional function by a public servant, which requires facts related to the conduct and does not require that the conduct was an intentional act.

custody level.  Compl., Doc. No. 1, PageID #16.  Plaintiff alleges this meant twenty-three hours daily lockdown, no mail or telephone privileges, and being "served less food."  *Id.*  He also says the cell was unsanitary and "urine saturated."[11]  *Id.*

First, Plaintiff has no protected liberty interest in his custody level, *see Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (citing *Meachum v. Fano*, 427 U.S. 215 (1976)), or in freedom from transfer to a less amenable housing unit or prison. *Hewitt v. Helms*, 459 U.S. 460, 468 (1983), *abrogated on other grounds by Sandin*, 515 U.S. 472.

Second, Plaintiff fails to allege atypical or significant hardship.  Plaintiff was already housed in the High SHU, either in administrative or protective custody or pursuant to some other discipline, when the cell extraction occurred. Plaintiff does not contest this earlier housing decision and the court therefore infers it comported with the prison's discretionary authority.  *See Sandin*, 515 U.S. at 486-87.  *Sandin* explicitly held that segregated confinement that mirrors the conditions imposed in administrative segregation and protective custody does not present the type of atypical and significant deprivation that rises to a state created

---

[11] Plaintiff also alleges he was retaliated against and his food was tampered with, but fails to explain how these incidents were exclusive to his confinement in the High SHU.

liberty interest.  *Id.* at 472 (holding that disciplinary segregation in HCF's SHU for 30 days did not give rise to a state created liberty interest or violate due process). Plaintiff does not explain how the imposition of time *already* served in the High SHU subjected him to atypical and significant hardship as compared to the normal incidents of prison life that he otherwise experienced.  That is, Plaintiff does not allege how his *sentenced* time served in the High SHU failed to mirror his time in segregated administrative or protective custody in the High SHU before the extraction.

Third, Plaintiff does not allege the duration of his "time served" sentence in HCF SHU.  It is therefore impossible to determine whether the degree of restraint was significant and atypical based on its length.  Plaintiff claims he was served less food, but he does not compare the amount of food in the High SHU with the amounts provided in other housing units.  As long as Plaintiff received a nutritionally adequate amount of food, however, a smaller portion or the inability to purchase extra commissary food does not equal a significant hardship.  Plaintiff says he was denied mail and telephone privileges; without facts showing the duration of this punishment, or allegations that he was denied *all* means of contact with the outside, this statement is meaningless.  Plaintiff also fails to allege that

his "time served" sentence in the High SHU will inevitably affect the duration of his sentence, which has not yet been imposed.[12]

Finally, Plaintiff's own admissions support the "some evidence" standard. Plaintiff admits he threw feces on the floor, window, table, and door outside his cell. This constitutes some evidence that Plaintiff knew that prison staff would be exposed to or come into contact with his bodily waste, in violation of COR. 13.03.4.2a.6(15). Plaintiff also states that he intentionally blocked his tray access slot with his arm and then locked it. Clearly, this constitutes "compromising . . . a locking mechanism," and physically interfering or obstructing a prison guard's performance of his duties in violation of COR. 13.03.4.2a.6(14) and COR. 13.03.4.2a.7(1).

Plaintiff fails to state sufficient facts for the court to plausibly infer that First Adjustment Committee Members Keoni Morreira, Manumaleuna, or Janice Villalobos denied him due process by failing to call his requested witnesses. These claims are DISMISSED for failure to state a claim.

---

[12] Plaintiff is awaiting sentencing for attempted murder in the state circuit court. *See State v. Pitts*, Cr. No. 1PC09-000097, available at: http://hoohiki1.courts.state.hi.us/jud/Hoohiki/main.htm. (last visited Jan. 28, 2016).

### 3.     *Second Adjustment Committee Hearing*

Plaintiff alleges the Second Adjustment Committee violated his due process rights when they denied him the right to call witnesses.  Plaintiff alleges *no* facts regarding the outcome of that hearing.  The court cannot plausibly infer an atypical and significant hardship that gave rise to a protected liberty interest.  Plaintiff's due process claim against Ueda and Tuifau fails to state a claim and is DISMISSED.

## IV.  <u>LEAVE TO AMEND</u>

Plaintiff may file an amended complaint on or before March 4, 2016, that cures the deficiencies noted above.  An amended complaint generally supersedes the previous complaint.  *See Lacey v. Maricopa Cty*., 693 F.3d 896, 907, n.1 (9th Cir. 2012) (en banc).  Thus, an amended complaint should stand on its own without incorporation or reference to a previous pleading.  Defendants not named and claims dismissed without prejudice that are not realleged in an amended complaint may later be deemed voluntarily dismissed.  *Id.* at 928 (stating claims dismissed with prejudice need not be repled in an amended complaint to preserve them for appeal, but claims that are "voluntarily dismissed" are considered "waived if not repled").

36

In the alternative, Plaintiff may notify the court in writing on or before March 4, 2016 that he will stand on his excessive force and state law assault and battery claims against Defendants Botelho, Taylor, Gernler, Keolanui, Magdadaro, Aguon, and Kent.  In that event, the court will order the Complaint served and require those Defendants to answer Plaintiff's claims against them.

IF Plaintiff chooses to amend his pleadings, he is REQUIRED to do so on the court's prisoner civil rights complaint form.  Although the court allowed Plaintiff to forgo using the form for his original Complaint because of his stated nerve damage and consequent difficulty writing, *see* Doc. No. 9, it will not do so for any amended pleading.

## V.  <u>CONCLUSION</u>

(1)  The Complaint is DISMISSED IN PART for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).  Specifically, Plaintiff states excessive force and state common law claims of assault and battery against Defendants Botelho, Taylor, Gernler, Keolanui, Magdadaro, Aguon, and Kent and these claims shall proceed and be answered after service is perfected.

Plaintiff fails to state a claim against (a) the DPS Sheriff's and Internal Affairs Offices and these claims are DISMISSED with prejudice; and

37

(b) Defendants Nolan Espinda, Lyle Antonio, Lieutentant Ho, Keoni Morreira, J. Tabali, Manumaleuna, Janice Villalobos, Ueda, Francis Tuifau, and Val DeMello, RN, and claims against them are DISMISSED with leave to amend.

(2)  Plaintiff may file an amended complaint curing the deficiencies in his dismissed claims on or before March 4, 2016.  Plaintiff SHALL use the court's prisoner civil rights complaint form if he chooses to amend his pleadings.

(3)  In the alternative, Plaintiff may NOTIFY the court in writing on or before March 4, 2016, that he elects to stand on his excessive force and state common law assault and battery claims against Defendants Botelho, Taylor, Gernler, Keolanui, Magdadaro, Aguon, and Kent.  If Plaintiff chooses this option, the court will order the U.S. Marshal to serve the Complaint at Plaintiff's direction as to those claims.

///

///

///

///

///

///

///

(4)  The Clerk is directed to mail Plaintiff the court's prisoner civil rights complaint form so that he can comply with the directions in this Order.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 8, 2016.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Pitts v. Espinda*, 1:15-cv-00483 JMS/BMK; scrn 2016 Pitts 15-483 jms(prt dsm 8 14 A dp)